

FILED & ENTERED

FEB 01 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Syed Aurangzeb Pirzada,<br>           Debtor. | Case No.:    2:16-bk-21026-ER<br>Chapter:    11<br><br>**MEMORANDUM OF DECISION<br>DENYING MOTION TO RECUSE**<br><br>[No hearing required pursuant to Federal Rule<br>of Civil Procedure 78(b) and Local Bankruptcy<br>Rule 9013-1(j)(3)] |

On January 23, 2017, Syed Aurangzeb Pirzada ("Debtor") filed a Motion to Recuse Judge Ernest Robles from the Above Case ("Recusal Motion") [Doc. No. 72]. Debtor did not schedule the Motion for hearing in accordance with the Local Bankruptcy Rules ("LBR"), and did not submit the Motion for adjudication on a negative-notice basis pursuant to LBR 9013-1(o). The Court finds this matter appropriate for disposition without oral argument pursuant to Civil Rule 78(b) and Local Bankruptcy Rule 9013-1(j)(3). For the reasons set forth below, the Recusal Motion is DENIED.

## I. Factual Background

On May 14, 2015, Debtor commenced a voluntary Chapter 11 petition, Case No. 2:15-bk-17752-ER ("First Petition"). Debtor was represented by counsel in connection with the First Petition. On July 21, 2016, the Court denied the Debtor's motion to confirm a Plan of Reorganization ("Plan"), and dismissed the First Petition. *See* Order: (1) Denying Debtor's Motion to Confirm Chapter 11 Plan of Reorganization [Doc. No. 84]; and (2) Dismissing Debtor's Chapter 11 Case ("Dismissal Order") [Doc. No. 105, Case No. 2:15-bk-17752-ER]. The Court denied the Debtor's motion to confirm the Plan on the grounds that the Plan was not feasible. The Plan required the Debtor to pay administrative expenses on the Plan's effective date, and to make quarterly payments on account of priority tax claims over a five-year period.

Because the Debtor was unemployed, had no source of income, and had no cash on hand, the Court found that it would not be possible for the Debtor to make the payments contemplated by the Plan. *See* Final Ruling Denying Confirmation Motion and Dismissing First Petition at 13–14 ("Dismissal Ruling") [Doc. No. 104, Case No. 2:15-bk-17752-ER; attached as Exhibit A and incorporated herein by reference as though set forth in full].

Based on the Debtor's inability to confirm the Plan, the Court found that cause existed to dismiss the First Petition. The Court found that dismissal, as opposed to conversion to Chapter 7, was in the best interests of creditors given that there was no evidence of any equity in the properties owned by the Debtor. *See* Dismissal Ruling at 14–15. Debtor did not appeal the Dismissal Order.

On August 18, 2016, Debtor commenced a second voluntary Chapter 11 petition, Case No. 2:15-bk-21026-ER ("Second Petition"). Debtor is not represented by counsel in the Second Petition.

Debtor's Recusal Motion

On January 23, 2017, Debtor filed a motion seeking to have the Hon. Ernest M. Robles disqualified from adjudicating the Second Petition. The two-paragraph Recusal Motion provides in its entirety:

> The debtor Syed Aurangzeb request[s] the court to remove Judge Ernest M. Robles from the above case as his ruling[s] have been improper and has violated many codes displaying impropriety, favoritism, bias and willful pattern of harm towards the debtor on whom he has a history of discrimination.
>
> A complaint has been filed against Judge Robles and a copy is being furnished to the Attorney General's office in Washington DC. The debtor will pursue investigation towards Judge Robles and harm he indulged towards the debtor was willfully and deliberate. He also hurt the unsecured creditors by his uncontrolled vengeance on the debtor due to religion and race. The declaration[s] are included to support this motion[.]

The Recusal Motion includes declarations from Donald Felich, Ronald Thomas, and Philip L. Hasel. Felich, Thomas, and Hasel state that they were creditors of the Debtor in connection with the First Petition and claim they were harmed by the Dismissal Order.

On January 20, 2017, Debtor filed a *pro se* complaint ("Original Complaint") against Judge Robles in the United States District Court for the Central District of California, Western Division (Case No. 2:17-cv-00506-SJO). On January 25, 2017, Debtor filed a First Amended Complaint. The allegations of the First Amended Complaint are substantially the same as those of the Original Complaint. The major difference is that unlike the Original Complaint, the First Amended Complaint is typed and contains numbered paragraphs.

The First Amended Complaint ("Complaint") alleges that a terrorist attack in France "drove Judge Robles insane" and motivated him to dismiss the First Petition, based on racial and religious animus toward Debtor, "who has a Muslim name and heritage." Complaint at ¶8. The Complaint alleges that Judge Robles "wanted revenge on" the Debtor, "enjoyed his sadistic activity," and "became more and more determined to harm" the Debtor. *Id.* at ¶¶8–9. The Complaint alleges that the dismissal was done "with evil intent to hurt" the Debtor, and with the recognition that upon dismissal, the Debtor "would suffer harm economically and become destitute and perhaps become destroyed, which may lead to the [Debtor's] death." *Id.* at ¶16. The

Complaint seeks $1 million in compensatory damages and $50 million in punitive damages. *Id.* at ¶¶23–24.

## II. Findings and Conclusions

Title 28 U.S.C. §455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b) sets forth examples of situations in which a judge must recuse himself. The Court concludes that the Debtor has not demonstrated either that the impartiality of the Court may reasonably be questioned or that any of the circumstances requiring recusal set forth in §455(b) apply.

Under §455(a), recusal is required "where 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Glick v. Edwards*, 803 F.3d 505, 508 (9th Cir. 2015), *cert. denied,* 137 S. Ct. 144, 196 L. Ed. 2d 112 (2016). "It is well established that the recusal inquiry must be 'made from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*.'" *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 924 (2004) (emphasis in original). "All evaluations of bias or prejudice under section 455 are made using an objective standard." *Goodwin v. Durkin (In re Goodwin)*, 194 B.R. 214, 222 (9th Cir. BAP 1996). In determining a motion to recuse, "the judge is not required to take the factual allegations as true." *Goodwin*, 194 B.R. at 222 (internal citation omitted). "A judge is presumed to be qualified to hear a matter and the burden is upon the moving party to prove otherwise. Stated otherwise, a party seeking recusal has the burden of producing facts which would raise reasonable doubt as to the impartiality of the judge." *In re Spirtos*, 298 B.R. 425, 431 (Bankr. C.D. Cal. 2003).

Where a judge holds an opinion derived from an "extrajudicial source"—a source outside judicial proceedings—recusal is sometimes, but not always, required. *Liteky v. United States*, 510 U.S. 540, 554 (1994). As the Supreme Court explained in *Litekey*:

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.,* at 28 (internal quotation marks omitted). *Not* establishing bias or

partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even
anger, that are within the bounds of what imperfect men and women, even after having
been confirmed as federal judges, sometimes display. A judge's ordinary efforts at
courtroom administration—even a stern and short-tempered judge's ordinary efforts at
courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–56.

Debtor alleges that the Court dismissed the First Petition based on religious and racial animus
against the Debtor. However, Debtor fails to identify any evidence of the alleged religious and
racial bias. The Court has issued multiple, detailed rulings in connection with the Debtor's cases,
and there is nothing in any of those rulings indicative of religious or racial bias. The Debtor's
argument is that the Court must be biased against him because the Court issued rulings that were
adverse to the Debtor's interests. The Debtor's reasoning is tautological, and has been rejected
by the Ninth Circuit, which has held that allegedly erroneous rulings are not evidence of bias and
do not support a partiality motion. *See Focus Media v. National Broadcasting Co. (In re Focus
Media, Inc.)*, 378 F.3d 916, 930 (9th Cir. 2004) (""Focus argues that these rulings were
erroneous and that such error is itself evidence of bias. This argument does not support a recusal
motion. 'Judges are known to make procedural and even substantive errors on occasion. The
errors alleged here would be the basis for appeal, not recusal.'"). The Debtor's argument is also
foreclosed by *Liteky*, which held that judicial opinions cannot show that the Court improperly
relied upon an extrajudicial source.

A "reasonable person with knowledge of all the facts," *Glick*, 803 F.3d at 508, would not
question the Court's impartiality, and would not conclude that the dismissal of the First Petition
resulted from racial or religious animus. An objective outside observer would instead conclude
that the First Petition was dismissed because the Debtor's lack of funds made the plan he
proposed unfeasible, as explained in the Dismissal Ruling.

An objective observer's conclusion that the Dismissal Ruling was not motivated by racial
bias would be bolstered by the Debtor's history of making unsubstantiated and inflammatory
allegations against parties who take positions adverse to him in litigation. The United States
Trustee ("UST") filed a motion to dismiss the Second Petition, based on the Debtor's failure to
comply with reporting requirements. In opposition to that motion, the Debtor accused Dare Law,
an attorney for the UST, of deliberately serving the motion upon an incorrect address; of acting
in a "destructive manner" in performing her responsibilities monitoring the Debtor's case; of
deliberately destroying information submitted to the UST's office by the Debtor in an attempt to
facilitate dismissal of the case; of being "corrupt and racist"; and of assisting the Debtor's
secured creditors in committing "borderline white-collar criminal act[s]." *See* Reply to U.S.
Trustees [sic] Motion to Dismiss or Convert Case [Doc. No. 52]. The Court found that there was
no merit to any of the Debtor's allegations against Ms. Law, and struck the paper containing the
allegations from the docket. *See* Order Granting United States Trustee's Motion to Strike Sur-
Reply Relating to Motion to Dismiss or Convert [Doc. No. 58].

Given the Debtor's history of making incendiary allegations when litigation does not go his
way, an objective observer would not question the Court's impartiality based upon the Debtor's
latest series of allegations. Rather, such an observer would perceive the allegations as yet another
instance of the Debtor crying wolf in a tactical attempt to avoid the consequences of adverse
judicial rulings.

The Debtor's filing of the Complaint does not require recusal. In *Focus Media*, the court
found that recusal was not required where a litigant filed a complaint alleging judicial

misconduct with the Judicial Council of the Ninth Circuit. The *Focus Media* court explained that requiring recusal under such circumstances would "open the door to misuse of the judicial misconduct complaint process as a means of removing a disfavored judge from a case." *Focus Media*, 378 F.3d at 930. The reasoning articulated in *Focus Media* applies with equal force to the present situation, in which the party seeking recusal has filed a complaint in the District Court.

Finally, recusal is not required under 28 U.S.C. §455(b). None of the specifically enumerated circumstances set forth in §455(b) apply to this case.

Conclusion

Based upon the foregoing, the Recusal Motion is DENIED. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: February 1, 2017

Ernest M. Robles
United States Bankruptcy Judge

# Exhibit A—Dismissal Ruling

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

---

**Wednesday, July 20, 2016**                                                        **Hearing Room    1568**

---

<u>10:00 AM</u>
**2:15-17752    Syed Aurangzeb Pirzada**                                                        **Chapter 11**

#5.00    Hearing
RE: [84] Motion  TO CONFIRM PLAN OF REORGANIZATION

FR. 6-7-16

Docket    84

Matter Notes:

7/20/2016

<span style="color:red">The tentative ruling will be the order.
Court to prepare the order.</span>

<span style="color:red">**POST PDF OF TENTATIVE RULING TO CIAO**</span>

**Tentative Ruling:**

7/19/2016:  For the reasons set forth below, Confirmation is DENIED and the case is
DISMISSED.

**Pleadings Filed and Reviewed**

- Individual Debtor's Plan of Reorganization ("Plan") [Doc. No. 60]
- Individual Debtor's Disclosure Statement In Support of Plan ("Disclosure
  Statement") [Doc. No. 61]
    - Order Approving Disclosure Statement and Setting Schedule on
      Confirmation of Plan [Doc. No. 77]
- Individual Debtor's Amended Plan of Reorganization ("Amended Plan")
  [Doc. No. 80]
- Individual Debtor's Amended Disclosure Statement In Support of Amended
  Plan ("Amended Disclosure Statement") [Doc. No. 79]
- Motion to Confirm Amended Plan ("Motion") [Doc. No. 84]
- Amended Plan Ballot Summary [Doc. No. 85]
- Order Approving Stipulation to Continue Hearing on Motion [Doc. No. 90]

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
Courtroom 1568 Calendar

**Wednesday, July 20, 2016**                                                                 **Hearing Room    1568**

10:00 AM
**CONT...**         **Syed Aurangzeb Pirzada**                                                                 **Chapter 11**
·    Objection to Amended Plan by Creditor The Socotra Fund, LLC
     ("Opposition") [Doc. No. 93]
          o    Declaration of Paul R. Cotter In Support of Opposition ("Cotter
               Decl.") [Doc. No. 96]
·    Reply of Debtor to Opposition [Doc. No. 99]
          o    Evidentiary Objections of Debtor to Cotter Decl. [Doc. No. 100]
·    *Untimely* Joinder to Opposition by Unsecured Creditor Peter J. Diedrich [Doc.
     No. 102]
·    Debtor's Monthly Operating Report for the Month Ending 5/31/16 [Doc. No.
     101]

**Facts and Summary of Pleadings**

        Syed Aurengzeb Pirzada ("Debtor") seeks confirmation of his amended
chapter 11 plan of reorganization.  For the reasons set forth below, the Court finds
that the Debtor's amended plan cannot be confirmed pursuant to 11 U.S.C. § 1129
and  HEREBY DENIES the Motion.  The case is HEREBY DISMISSED, subject to
oppositions at the hearing.

        *Description and History of Debtor's Assets*

        On May 14, 2015, the Debtor filed a voluntary chapter 11 petition.  Doc. No.
1.  On August 7, 2015, the Court entered an order requiring the Debtor to file a
disclosure statement and a chapter 11 plan of reorganization by no later than January
29, 2016.  Doc. No. 28.  The Debtor complied by filing the *Individual Debtor's Plan
of Reorganization* ("Plan") [Doc. No. 60] and the *Individual Debtor's Disclosure
Statement In Support of Plan* ("Disclosure Statement") [Doc. No. 61] on January 29,
2016.  On March 18, 2016, after notice and a hearing, the Court entered an order
approving the Disclosure Statement, but ordered that the plan "set forth a time
limitation on the sale or refinance alternatives."  Doc. No. 77.  The Court stated that a
two-year period from the effective date would be acceptable.  *Id.*  The Court
cautioned the Debtor that in the event that the subject properties were not sold or
refinanced by that time, the case would be converted to chapter 7.  *Id.*  The Debtor
subsequently filed an amended Disclosure Statement ("Amended Disclosure
Statement") [Doc. No. 79] and an amended Plan ("Amended Plan") [Doc. No. 80].
The Debtor filed the instant motion seeking to confirm the Amended Plan ("Motion")
and set the matter for hearing on May 6, 2016.  Doc. No. 84.  The Court subsequently

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                                        **Hearing Room    1568**

10:00 AM
**CONT...    Syed Aurangzeb Pirzada**                                                        **Chapter 11**
hearing on May 6, 2016.  Doc. No. 84.  The Court subsequently approved a
stipulation to continue the confirmation hearing to July 20, 2016.  Doc. No. 90.

        The Debtor owns two parcels of real property in the County of Monterey,
California: (1) a 40-acre parcel of land with an unfinished single-family residence
located at 68439 Jolon Road, Bradley, California 93426 ("Jolon Property"); and (2) an
unimproved parcel of land located on Heinsen Road in Bradley, California, APN 423-
291-011 ("Heinsen Property" or collectively, "Properties").  The Properties were
acquired for investment purposes; neither property is used by the Debtor as his
primary residence.  On October 22, 2015, the Debtor filed an employment application
to hire James Lovato of the Pedersen Realty as his real estate broker ("Broker") to
market and sell the Properties ("Broker Application").  Doc. No. 61.  The Broker
Application was approved by the Court on December 21, 2015.  Doc. No. 57.  The
Debtor listed the Jolon Property for $1.6 million based on an appraisal report that
reflects the same as the fair market value as of August 10, 2013 ("Jolon Appraisal
Report").  Amended Disclosure Statement, Ex. 3.  The Heinsen Property was listed
for $299,000 ("Heinsen Listing Price").  Amended Plan at 6.  The Debtor offers a
single-page letter written to the Debtor from a certified appraiser dated September 3,
2015, in support of the Heinsen Listing Price.  Amended Disclosure Statement, Ex. 4.
The letter notes that the Heinsen Property's fair market value falls between $85,000
and $335,000.  *Id.*  The appraiser states that a "full report will be available by
Monday, [September 7, 2015]."  *Id.*  A full appraisal report was not attached to the
Disclosure Statement, and is neither discussed in nor attached to the Amended
Disclosure Statement or the Amended Plan.

        The Debtor has no other significant non-exempt assets from which to make
any payments to his creditors.  Amended Disclosure Statement at 7.  The Debtor
states that he is unemployed, and his sole source of income comes from the operation
of Sattra, LLC ("Sattra"), an entity located in Las Vegas, Nevada, of which the Debtor
is the sole member.  *Id.*  Sattra is a start-up company engaged in the research and
development, and sale, of natural skin care and cosmetic products.  *Id.*  The Debtor
lists the value of Sattra at $1,001 on Schedule B.  Motion, Exhibit 2.  The Debtor
contends that Sattra is presently not profitable and he is unable to project if or when it
will become profitable.  Amended Disclosure Statement at 7.  For that reason, Sattra
is not considered a factor in the Amended Plan.  *Id.*  The Debtor "do[es] not have any
projected disposable income in the foreseeable future."  Motion at 21.

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                                        **Hearing Room    1568**

10:00 AM
**CONT...**        **Syed Aurangzeb Pirzada**                                                **Chapter 11**

*Description of the Plan*

As a preliminary matter, the Court notes that there are many missing facts and
inconsistent statements between the Amended Disclosure Statement and the Amended
Plan, as discussed below.  Overall, the Debtor's proposed classification and treatment
of many claims are unclear.

The effective date of the Amended Plan is fourteen (14) days following the
date of entry of the order confirming the Plan ("Effective Date").    Amended
Disclosure Statement at 2.  The Amended Plan is a liquidating plan.  *Id.*  The Debtor
lists the following administrative expenses and claims: (1) an undisclosed amount of
professional fees; (2) an undisclosed amount of pre-petition domestic support
obligations; and (3) an undisclosed amount of quarterly fees to the United States
Trustee.  Amended Plan at 2-3.  The Debtor proposes to pay such expenses and
claims in full on the Effective Date (after obtaining Court approval, if necessary).
Beyond proposing to pay these expenses in full, the Debtor does not provide any
further information on the source of funds that will enable him to pay these claims on
the Effective Date.

The Debtor lists the following classes and proposed treatments of creditors:

Class 1: The Debtor lists the following priority tax claims and intends to make
quarterly payments over five years, due on the first day of each quarter, starting on
the first such date after 180 days after the Effective Date [Amended Plan at 3]: (1) an
"undisclosed" amount of property taxes on the Properties [Amended Disclosure
Statement at 3]; in the Amended Plan, the Debtor states that two purported claims
have been filed in Class 1 by the Monterey County Tax Collector's Office ("County")
[Amended Plan at 4]; the County filed two proofs of claim for $9,555.62 and
$3,708.75, respectively [Claims Nos. 5-1 & 6-1]; the Debtor also lists the County's
claim for $9,555.62 under Class 3(b) [Amended Plan at 5]; (2) unpaid income taxes
due to the United States Internal Revenue Service ("IRS") in the amount of $5,579.41
[Amended Disclosure Statement at 4]; however, the IRS filed a proof of claim for
$26,387.27 on June 29, 2015 [Claim No. 4-1], subsequently amended on May 24,
2016 to $20,807.86 [Claim No. 4-2]; and (3) undisclosed amounts of unpaid taxes to
the State of California Franchise Tax Board ("FTB") for tax years 2012, 2013, and

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                        **Hearing Room    1568**

10:00 AM
**CONT...        Syed Aurangzeb Pirzada                                        Chapter 11**

2014; the FTB claims listed in the Amended Disclosure Statement are not mentioned in the Amended Plan.  The Debtor does not provide an estimated total amount of priority tax claims or estimated quarterly payment amounts.  The Debtor also fails to disclose the funds from which he will pay the quarterly payment amount.

Class 2: Secured claims on Debtor's principal residence.  There are no claims in this class.

Class 3: Unimpaired secured claims on property other than the Debtor's principal residence, divided into five (5) sub-classes:

(I) Class 3(a): a secured claim on the Jolon Property by The Socotra Fund, LLC ("Socotra") for $656,673.51 [**FN 1**]; the Debtor asserts that the true balance owed to Socotra is approximately $615,000 (not including accrued interest) and intends to object to the claim.  As discussed in detail below, Socotra filed an objection contending that its claim is, in fact, impaired and thus Socotra should have been able to vote to accept or reject the Amended Plan.  *See* Doc. No. 93.

(II) Class 3(b): a secured claim on the Jolon Property by the County for $9,555.62 for unpaid property taxes for tax year 2014-2015.  Claim No. 5.  This claim for $9,555.62 corresponds with one of the two proofs of claim filed by the County, also classified by the Debtor under Class 1, as discussed above.

(III) Class 3(c): a secured claim on the Heinsen Property by the Daniel F. Bull Family Trust ("Bull") for $104,644.60 [Claim No. 11] in the first position.  Although classified as unimpaired, Bull cast a vote rejecting the Amended Plan.  The Debtor continues to assert that creditor Bull's claim is unimpaired and thus Bull is not entitled to vote on the Amended Plan.  Motion at 2.

(IV) Class 3(d): a secured claim on the Heinsen Property by Donald Felich ("Felich") for $55,000 in the second position.  As later discussed in detail, this claim is in the amount of $305,000 according to Felich's Plan Ballot.  Motion, Ex. 1.

(V) Class 3(e): a secured claim on the Heinsen Property by the County for

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                    **Hearing Room    1568**

10:00 AM
**CONT...**        **Syed Aurangzeb Pirzada**                                         **Chapter 11**

$1,718 for unpaid property taxes for tax year 2014-2015 [*see* Claim No. 6, pg. 6].

All claims under Classes 3(a), 3(b), 3(c), 3(d), and 3(e) will be paid in full when the Properties securing the liens are sold.  The Debtor contends that these classes are unimpaired and not entitled to vote on the Amended Plan.  In the Motion, the Debtor proposes to pay all "secured creditors' allowed claims . . . in full with interest to the date of payment."  Motion at 2.  The Amended Plan, however, proposes different treatments for secured creditors.  *Compare* Amended Plan, Article II, Classification and Treatment of Claims, Class 3(c) (Socotra's claim "will be paid as allowed in full under the terms of its promissory note and deed of trust and any subsequent modifications thereto."), *with* Amended Plan, Article II, Classification and Treatment of Claims, Class 3(e) (County's claim "will be paid in full from escrow out of the sale of this property, *including any accrued interest, charge and penalties*.") (emphasis added).  The Amended Disclosure Statement is silent on this issue.  It is unclear which of the secured claims, if any, the Debtor intends to pay in full without interest and costs.

With respect to the sale efforts, the Debtor states the Jolon Property is listed for $1,600,000 and will continue to be marketed until an "acceptable sale price is realized."  Amended Plan at 5.  Similarly, the Debtor listed the Heinsen Property at $299,000 and will continue to market the property until an "acceptable sale price is realized."  *Id.* at 6.  The Debtor does not list or identify an estimated date of sale of the Properties or provide any information as to interested or prospective buyers of the Properties in the Amended Disclosure Statement or Amended Plan.

Class 4: unimpaired secured claims on collateral to be surrendered.  There are no claims in this class.

Class 5: impaired secured claims on property other than the Debtor's principal residence, which includes: a claim of $6,500 held by Green Road Finance secured by 2006 BMW 330i automobile, and a claim of $23,095.21 held by Acton Professionals, Inc. secured by a property unspecified by the Debtor.  The Debtor proposes to pay Class 5 claims with proceeds from the sale of the Properties.  Any unpaid balances will be treated as general unsecured claim in Class 6.

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                        **Hearing Room    1568**

<u>10:00 AM</u>
**CONT...        Syed Aurangzeb Pirzada**                                        **Chapter 11**

Class 6: 27 general unsecured claims totaling $441,667.96. Class 6 claims will be paid their pro rata share from the funds remaining after the liquidation of the Debtor's non-exempt assets. Amended Plan at 8. The Debtor does not provide an estimated distribution to Class 6 creditors.

The Debtor intends to assume the lease to his apartment, which serves as his primary residence. The Debtor is not a party to any other executory contracts or leases. The Debtor identifies several risks involved in the Amended Plan. First is the possibility that the Debtor is unable to sell and/or refinance the Properties at the valuations provided by the appraisers. Amended Plan at 11. According to the Amended Disclosure Statement, the Debtor is to accomplish either the sale or refinancing of the Properties within two (2) years from the Effective Date. Amended Disclosure Statement at 8. The Amended Disclosure Statement acknowledges that in the event this does not occur on, or before this deadline, the Court will, after notice and a hearing, **[FN 2]** convert the case to under Chapter 7 of the Code. This provision, however, is absent from the Amended Plan. Instead, the Debtor proposes to continue to market the Properties until an "acceptable" sale price is realized, at which point the Class 3 claims will be paid in full. Amended Plan at 5-7.

The Debtor filed a plan ballot summary ("Ballot Summary") on May 6, 2016. Doc. No. 85. The Ballot Summary reflects that out of the three impaired classes, two classes, Class 1 and Class 6, voted to approve the Amended Plan. Ballot Summary at 1. The Debtor's breakdown of the Ballot Summary is as follows:

Class 1 – Impaired:
·  1 claim, 1 vote accepting, 100% of aggregate dollar amount.
Class 3(c) – Unimpaired:
·  1 claim, 1 vote rejecting, 100% of aggregate dollar amount.
Class 5 – Impaired:
·  2 claims, no votes cast.
Class 6 – Impaired:
·  Four (4) claims, five (5) votes accepting, 125% of aggregate dollar amount.

The Debtor continues to assert that Class 3(c) creditor is not impaired and thus not entitled to vote on the Amended Plan. Motion at 2. The Debtor submits that this

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
Courtroom 1568 Calendar

**Wednesday, July 20, 2016**                                    **Hearing Room    1568**

10:00 AM
**CONT...        Syed Aurangzeb Pirzada**                                    **Chapter 11**

issue will not determine the broader issue of confirmation "inasmuch as the
requirements for cramdown of the plan on dissenting secured creditors have been
met." Motion at 2. Secured creditor Socotra contends that the Debtor incorrectly
classifies its claim as *unimpaired*, and thus, it should have been entitled to vote on the
Amended Plan under 11 U.S.C. § 1124 ("Socotra Opposition"). Doc. No. 92. In
response, as discussed in detail below, the Debtor contends Socotra is, in fact,
unimpaired, or in the alternative, Socotra's vote would make no difference in the
outcome of the Motion. Doc. No. 99. The Debtor attaches the following ballots as
Exhibit 1 of the Motion.

·   Donald L. Felich, no Class identified, holding a claim in the unpaid
    amount of $305,000, voted to **accept** the Amended Plan. According to the
    Amended Disclosure Statement, Felich holds an unimpaired, secured
    claim in the amount of $55,000. Motion at 6. Thus, as a Class 3(d)
    unimpaired creditor, according to the Debtor's classification, Felich's vote
    would not count;
·   Philip L. Hasel, no Class or claim amount identified, voted to **accept** the
    Amended Plan;
·   Ronald H. Thomas, holder of a "Class Unsecured" claim in the unpaid
    amount of $40,000 voted to **accept** the Amended Plan;
·   The Daniel F. Bull Family Trust of 1997, holder of a Class 3(c) claim in
    the amount of $110,813.37 as of October 14, 2015, voted to **reject** the
    Amended Plan;
·   Peter J. Diedrich, holder of a Class 6 claim in the unpaid amount of
    $41,000, voted to **accept** the Amended Plan; and
·   The County, holder of a Class 3(b) claim in the amount of $9,555.62 plus
    accrued interest at 18%, voted to **accept** the Amended Plan. The Court
    notes that the County tax claims are classified by the Debtor under both
    Class 1 and Class 3(b).

*Opposition to Confirmation of the Amended Plan*

As discussed above, Socotra contends that its claim is impaired based on the
Debtor's: (1) failure to make the balloon payment of all unpaid principal and interest
on a loan that matured prepetition on January 1, 2015; (2) failure to keep
uninterrupted insurance coverage on the property; and (3) failure to pay property

### United States Bankruptcy Court
### Central District of California
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

---

**Wednesday, July 20, 2016**                                    **Hearing Room    1568**

---

10:00 AM
**CONT...        Syed Aurangzeb Pirzada**                                    **Chapter 11**

taxes. Cotter Decl. ¶ at 6. Socotra objects as the Amended Plan provides for two
years from the Effective Date for the Debtor to sell or refinance the Properties
intended to fund the payment of Socotra's claim, thus forcing Socotra to wait for
repayment up to four times longer than the contractual terms of its twelve month loan,
potentially longer if necessary to convert the case after unsuccessful marketing.
Opposition at 2. The Property was listed at $1,600,000 in September 2015,
$3,500,000 in December 2015, and $2,500,000 in February 2016. Cotter Decl. ¶ at 9.
The latest asking price of $2,500,000 is 56% more than the $1,600,000 asking price
listed in the Amended Plan and the most recent appraised value. *Id.* at 2-3. This
"artificial inflation" is preventing liquidation of the property and payment of creditors.
*Id.* Socotra contends that despite three months on the market without sale, the Debtor
then "inexplicably" doubled the asking price, which, "demonstrates, at a minimum,
that the debtor is not serious about expeditiously selling the Property and establishes
his lack of commitment to doing so." *Id.* at 5.

Socotra requests that any confirmation order include the following provisions:
(1) the Debtor is required to file a quarterly report to disclose and set forth Debtor's
reasonable, good faith efforts to market and sell the Properties during the period, any
offers received, and the status of any pending sales; and (2) if any creditor reasonably
believes Debtor is not exercising reasonable efforts to market and sell the Properties
proposed to be sold under the Plan, including the advertised sales price, said creditor
may file a request with the Court, and after notice and hearing, the Court may order
the sales price, terms, and/or marketing efforts revised ("Conditions"). Opposition at
6.

*Debtor's Reply to Opposition*

The Debtor filed a reply to the Opposition ("Reply"), characterizing the
objection based on Socotra's classification as an unimpaired creditor as a "red
herring." Doc. No. 99. The Debtor states that the Amended Plan "proposes to sell the
subject property for an amount sufficient to at a minimum pay Socotra in full
*including all of the interest, charges and expenses provided for in the loan
documents*." (emphasis added). *Id.* at 3. The Debtor contends, relying on *In Re Entz-
White Lumber and Supply, Inc.*, 850 F.2d 1338 (9th Cir. 1988), that the Debtor is
"reinstating the matured note for the purpose of paying it *in full*." Reply at 4. Thus,
Socotra is not impaired and not entitled to vote on the Amended Plan. *Id.*

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                        **Hearing Room    1568**

<u>10:00 AM</u>
**CONT...    Syed Aurangzeb Pirzada**                                        **Chapter 11**

Further, even if Socotra could, and did vote against the Amended Plan, the
Debtor contends "all of the criteria for a cramdown of the plan under § 1129(b) have
been met as shown in the Debtor's Motion." *Id.*  As to the varying asking prices, the
Debtor contends that the Broker is "entitled to use whatever tactics (s)he deems
appropriate to obtain the best possible price for the property, provided they are not
prohibited by law or order of the Court," and contends that marketing strategies are
not relevant to the instant Motion. *Id.* at 5.  According to the Debtor, the Amended
Plan simply has one statement mentioning the listing price of $1,600,000 and thus
Socotra's objection to the Amended Plan based on the multiple listing prices
"misleads" the Court. *Id.* at 6.

Additionally, the Debtor submits evidentiary objections to multiple statements
in the declaration of Paul Cotter, Socotra's general counsel ("Cotter Declaration")
[Doc. No. 93], as follows:

·    Cotter's statements regarding the marketing history of the Jolon Property
and the fluctuating listing prices based on hearsay, lack of foundation,
unqualified factual conclusion(s), best evidence rule, lack of personal
knowledge, speculation, and relevance [Cotter Decl. ¶ at 3:6-15];
·    Cotter's provided screenshot, reflecting the three different listing prices
based on lack of foundation, unqualified factual conclusion(s), lack of
personal knowledge, hearsay, best evidence rule, and relevance [Cotter
Decl. ¶ at 3:16-24];
·    Cotter's attachment of Exhibit D as true and correct copies of online sales
materials based on lack of foundation, unqualified factual conclusion(s),
lack of personal knowledge, hearsay, best evidence rule, and relevance
[Cotter Decl. ¶ at 4:1-3]; and
·    Images of the Jolon Property in Exhibit D based on lack of foundation,
hearsay, lack of personal knowledge, and relevance [Cotter Decl. ¶ at 30-
32].

("Evidentiary Objections").  Doc. No. 100.

On July 18, 2016—one day prior to the hearing on the Motion—unsecured
creditor Peter J. Diedrich ("Diedrich") filed a joinder to the Opposition.  Doc. No.

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
**Judge Ernest Robles, Presiding**
Courtroom 1568 Calendar

**Wednesday, July 20, 2016**                                    **Hearing Room    1568**

10:00 AM
**CONT...    Syed Aurangzeb Pirzada**                              **Chapter 11**

102. While Diedrich voted to approve the Amended Plan, Diedrich contends that the Amended Plan should include the Conditions set forth in Socotra's Opposition. *Id.* at 2.

**Findings of Fact and Conclusions of Law**

As an initial matter, the Court first addresses the Evidentiary Objections brought by the Debtor. Inasmuch as the Court is not relying on the cited portions of the Cotter Declaration to make the following findings of fact and conclusions of law. Therefore, the Evidentiary Objections are denied as moot. *See Operating Engineers' Pension Trust Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 907 (N.D. Cal. 2010) ("Because the Court does not rely on the statements in this declaration, it is not necessary for the Court to rule on these objections.").

Section 1129(a) states that, "The court shall confirm a plan only if . . . [t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). According to the leading treatise, the "legislative history suggests that the applicable provisions are those governing the plan's internal structure and drafting: 'Paragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as section 1122 and 1123, governing classification and contents of a plan.'" *Collier on Bankruptcy* ¶ 1129.01[1] (16th rev'd ed.) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978)). Based on the reasons set forth below, the Court finds that the Amended Plan does not comply with multiple provisions of chapter 11.

<u>Impairment and Cramdown</u>

The Debtor contends that he is entitled to have the Amended Plan confirmed over the objections of multiple secured creditors. The Debtor summarily concludes that he is entitled to confirmation as a matter of law because the secured creditors' claims are unimpaired or, in the alternative, because the secured creditors' claims will be satisfied in full. Section 1129(a)(8) requires each class accept the plan, unless the class is not impaired. "The holder of a claim or interest allowed . . . may accept or reject a plan." 11 U.S.C. § 1126(a). The Court first addresses Socotra's contention that the Debtor erroneously classified Socotra's claim as a Class 3(a) *unimpaired* secured claim. Under 11 U.S.C. § 1124:

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Judge Ernest Robles, Presiding
Courtroom 1568 Calendar

**Wednesday, July 20, 2016**                                                        **Hearing Room    1568**

10:00 AM
**CONT...**      **Syed Aurangzeb Pirzada**                                                **Chapter 11**

[A] class of claims or interest is impaired under a plan unless,
with respect to each claim or interest of such class, the plan—
(1) leaves unaltered the legal, equitable, and contractual rights
to which such claim or interest entitles the holder of such claim
or interest; or
(2) notwithstanding any contractual provision or applicable law
that entitles the holder of such claim or interest to demand or
receive accelerated payment of such claim or interest after the
occurrence of a default—
(A) cures any such default that occurred before or after the
commencement of the case under this title, other than a default
of a kind specified in section 365(b)(2) of this title or of a kind
that section 365(b)(2) expressly does not require to be cured;
(B) reinstates the maturity of such claim or interest as such
maturity existed before such default;
(C) compensates the holder of such claim or interest for any
damages incurred as a result of any reasonable reliance by such
holder on such contractual provision or such applicable law;
(D) if such claim or such interest arises from any failure to
perform a nonmonetary obligation, other than a default arising
from failure to operate a nonresidential real property lease
subject to section 365(b)(1)(A), compensates the holder of such
claim or such interest (other than the debtor or an insider) for
any actual pecuniary loss incurred by such holder as a result of
such failure; and
(E) does not otherwise alter the legal, equitable, or contractual
rights to which such claim or interest entitles the holder of such
claim or interest.

11 U.S.C. § 1124. *See In re Acequia, Inc.*, 787 F.2d 1352, 1363 (9th Cir. 1986)
(emphasizing that an interest is impaired "*unless*" the plan leaves the holder's rights
unaltered) (emphasis added). According to *In re L & J Anaheim Associates*, 995 F.2d
940, 942 (9th Cir. 1993), "[i]t is well established that, with this language, 'Congress
define[d] impairment in the broadest possible terms.'"  In the Ninth Circuit, a debtor
may reinstate a fully-matured loan that the debtor defaulted on pre-petition by curing
arrearages with interest at the market rate or at the pre-default rate provided for in the

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                    **Hearing Room    1568**

10:00 AM
**CONT...    Syed Aurangzeb Pirzada**                              **Chapter 11**

contract.  *See In re Wentz-White Lumber and Supply, Inc.*, 860 F.2d 1338 (9th Cir.
1988); *In re Udhus*, 218 B.R. 513, 518 (B.A.P. 9th Cir. 1998).

Socotra made a twelve-month loan to the Debtor that matured on January 1,
2015.   By signing the promissory note, the Debtor entered into a contractual
agreement with Socotra to make monthly interest payments beginning on March 1,
2014, and to make such payments until the entire indebtedness and all accrued unpaid
interest and fees were fully paid, with any unpaid principal and interest due and
payable on January 1, 2015.  Doc. No. 96, Ex. A.  The Debtor does not dispute that he
defaulted on the loan after the balloon payment came due on January 1, 2015, prior to
the Petition filing date of May 14, 2015.  Doc. No. 1.  Under the Amended Plan,
Socotra is to be paid in full after the Jolon Property is sold.  The Debtor contends that
regardless of the delay—because the Debtor proposes to reinstate the matured note
"for the purpose of paying it *in full*"—Socotra's claim is not impaired.  However, as
indicated above, it is unclear whether the proposed treatment of Socotra's claim will
include interest payments due to conflicting information provided in Debtor's
pleadings.   Thus, the Court finds that the Debtor fails to provide sufficient
information to demonstrate that the Socotra's claim is unimpaired under the Amended
Plan.  Notwithstanding, the Court finds that this issue is moot because the Amended
Plan is not feasible and lacks adequate means of implementation, as explained below.

<u>Feasibility and Adequate Means of Implementation</u>

Section 1129(a)(11), known as the "feasibility requirement," requires the
Court to find that "[c]onfirmation of the plan is not likely to be followed by the
liquidation, or the need for further financial reorganization, of the debtor or any
successor to the debtor under the plan, unless such liquidation or reorganization is
proposed in the plan."  11 U.S.C. § 1129(a)(1)).  Here, the Court finds that the
Amended Plan is not feasible.  According to the Debtor's most recent monthly
operating report submitted for the period ending May 31, 2016 ("MOR"), the only
credits to the Debtor's accounts are a $3,120 social security payment and a $112
deposit.  Doc. No. 101.  The MOR also reflects that the Debtor had a total of $0.88 in
total cash available in his debtor-in-possession accounts.  *Id.*  Additionally, the Debtor
contends that the Debtor is unemployed, with Sattra, his sole source of income,
currently not profitable, and does not project to receive any disposable income in the
foreseeable future.   On the other hand, the Debtor proposes to pay unspecified
amounts of administrative expenses on the Effective Date, and also proposes to make

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                            **Hearing Room    1568**

10:00 AM
**CONT...        Syed Aurangzeb Pirzada**                                            **Chapter 11**

expenses on the Effective Date, and also proposes to make quarterly payments over five years for priority tax claims pursuant to § 1129(a)(9). The Debtor will also have to pay quarterly United States Trustee's fees. The Debtor simply fails to explain how he intends to make such payments without a regular source of income or cash reserves.

The Court is also skeptical about the Amended Plan's feasibility based on the uncertainties regarding the actual amounts of the claims. First, the Debtor scheduled the Felich claim as $55,000, while Felich claimed an amount of $305,000 in the Plan Ballot. Second, the Debtor states that the true balance owed to Socotra is approximately $615,000 [Amended Plan at 5], whereas the proof of claim filed by Socotra reflects that the claim is $864,037.24 [Claim No. 12-1]. While the Debtor stated his intention to file an objection to Socotra's claim, the Court has not receive an objection to Socotra's proof of claim as of the date of the Tentative Ruling. Amended Plan at 5. Additionally, the Debtor states he owes unpaid income taxes to the IRS in the amount of $5,579.41. However, the amended proof of claim filed by the IRS on May 24, 2016, reflects that the claim amount is $20,807.86. Claim No. 4-2. Overall, the Amended Plan fails to satisfy the feasibility requirement under § 1129 (a)(11).

Similarly, § 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation." Here, the Court finds that there is no adequate means for the Debtor to implement the Amended Plan. While the Debtor's intention of selling the Properties for the purpose of paying all creditors in full is clear, the Amended Plan provides no information with respect to the Debtor's ability to keep current on post-confirmation obligations until the Properties are sold. As stated above, the Debtor fails to address how he intends to pay all administrative priority claims or the quarterly priority tax claims. The Amended Plan does not satisfy § 1123(a)(5).

Based on the foregoing, the Court finds that the Debtor will not be able to propose and confirm an effective chapter 11 plan of reorganization. Section 1112(b) provides that "the Court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). A bankruptcy court has broad discretion to convert or dismiss a chapter 11 petition for "cause" under § 1112 (b). *In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000) *subsequently aff'd*, 336 F.3d 864 (9th Cir. 2003) (citing *Pioneer Liquidating Corp. v. United States*

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                        **Hearing Room    1568**

10:00 AM
**CONT...        Syed Aurangzeb Pirzada**                                        **Chapter 11**
*Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (9th Cir. B.A.P.
2000)).  Section 1112(b)(4) provides a list of non-exhaustive factors that constitute
"cause."  11 U.S.C. § 1112(b)(4); *In re Kenny G Enterprises, LLC*, 2014 WL
4100429, at *11 (9th Cir. BAP Aug. 20, 2014).  Here, the Court finds that cause exists
under § 1112(b) to convert or dismiss the case based on the Debtor's inability to
propose and confirm an effective chapter 11 plan of reorganization based on the reasons
set forth above.

        Having determined that "cause" exists, the Court must next determine whether
dismissal or conversion serves the best interests of creditors or the estate.  *See In re
Products Int'l Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008) (citing *In re Nelson*, 343
B.R. 671 (9th Cir. 2006)).  "[W]hen deciding between dismissal and conversion under
11 U.S.C. § 1112(b), the court must consider the interests of all of the creditors."
*Shulkin Hutton, Inc. v. Treiger (In re Owens)*, 552 F.3d 958, 961 (9th Cir. 2009)
(emphasis in original) (quoting *Rollex Corp. v. Associated Materials, Inc. (In re
Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir.1994)).  Based on the
Debtor's inability to market and attract interest in the Properties thus far, the Court is
uncertain as to the existence of equity in the Properties.  Thus, the Court is inclined to
dismiss the case to allow the secured creditors to exercise their rights under applicable
state law.  An appointment of a chapter 7 trustee will necessarily impose additional
costs and expenses on the estate and its creditors.  Accordingly, the Court finds that
the interests of creditors will be best served by dismissing the instant case.

        For the reasons set forth above, the Motion for confirmation is DENIED and
the case is DISMISSED.

        Court to prepare the orders.

**Note 1:** In the Amended Plan filed on March 18, 2016, the Debtor avers that Socotra
had yet to file a proof of claim.  However, the Court notes that Socotra did, in fact,
file a proof of claim in the amount of $846,037.24 on February 9, 2016, more than a
month prior to the Amended Plan filing date.  *See* Claim No. 12-1.

**Note 2:** The Amended Disclosure Statement incorrectly represents that the Court will
consider a conversion to chapter 7 only "after notice and a hearing as defined in §102
(1) of the Bankruptcy Code."  The Court order states that, "In the event the subject

**United States Bankruptcy Court**
**Central District of California**
**Los Angeles**
**Judge Ernest Robles, Presiding**
**Courtroom 1568 Calendar**

**Wednesday, July 20, 2016**                                      **Hearing Room    1568**

10:00 AM
**CONT...      Syed Aurangzeb Pirzada**                                      **Chapter 11**

properties are not sold or refinanced by that time, the case will convert to chapter 7."
*See* Doc. No. 2.

| Party Information |
|:---:|

**Debtor(s):**

Syed Aurangzeb Pirzada                    Represented By
                                          Steven A Schwaber